*Bates,* for plaintiff.

*Frame,* for defendant.

——»»)●●●«««——

### The Lessee of WILLIAM BARNARD, et al *vs.* EZEKIEL BAILEY and MATTHEW KETTLEWOOD.

A person devised as follows: "I give and bequeath to my widow all and singular my whole estate real and personal, to have and to hold during her natural life. Item: I order and direct that my widow shall not will to my blood kin, or any of her blood kin, any of the estate above-mentioned; or, in other words, my meaning is, that I leave my widow my whole estate forever, and to be at her disposal at her death, except mine or her blood kin;" *held,* that this was not merely a life estate in the widow with a power of appointment at her death, but a *fee simple,* and that the subsequent restriction was *void.* (*a.*)

Ejectment. Case stated.

The lessors of the plaintiff are the heirs at law of William Walter, deceased. The defendants are the tenants in possession, holding under the heirs at law of Ann Walter, the widow of the said William Walter.

(*a*) A curious case on this subject was much litigated in the old courts, between which there was a difference of opinion as to the effect of a restric-

The said William Walter, on the sixth day of June, one thousand eight hundred and twenty, made and published his last will and testament in writing, in the words following, to wit: "Item, I give and bequeath unto my widow all and singular my whole estate, real and personal, to have and hold during her natural life."

tion on a devise of land—that the divisee "should not involve himself in debt to the amount of £30."

Dehorty's lessee *vs.* Jones, et. al. Supreme Court, Kent, Oct. Term 1815.

EJECTMENT. The merits of this case turned upon the validity of a condition annexed to a devise in fee simple—"To testator's sons and his heirs, upon condition that he should not involve himself in debt to the amount of £30," in which case the land was given over to the testator's daughters. Defendants claimed under the son.

This cause was first tried in this court at March Term, 1814, and a verdict for defendant; the court charging the jury that the condition was *void* and the devise absolute. Bill of exceptions to this and the cause taken to the High Court of Errors and Appeals, which court on argument, decided that the condition was *good*, and remanded the cause to this court for final decision; and now it came on for trial.

*Hall* and *Ridgely* for plaintiff.—1. The condition is good; the son did become indebted in a greater sum than £30, and therefore we are entitled to recover.—2. At all events the judgment and opinion of the High Court of Errors and Appeals is conclusive as to the question in this cause. *Clayton* and *Rodney*, contra.

JOHNS, C. J.—The question of law in this case is so plain that there can be no rational doubt respecting it. We are decidedly of opinion that this condition is *void*. The decisions of the High Court of Errors and Appeals are certainly binding on us; but when this case was argued, Chancellor Ridgely, Chief Justice Booth and Judges Way and Warner, were the only members of the court; there was a bare majority, and Chief Justice Booth and Judge Warner have since changed their opinions, and think the condition *void*.

Verdict for defendants again. Bill of exceptions again.

In High Court of Errors and Appeals, June Term, 1818.—The case of Dehorty's Lessee *vs.* Jones et al., came on upon a writ of error to the Supreme Court.

Copy of so much of the said will of John Dehorty as came in question:—"I give and bequeath unto my son, John Dehorty, after the death of my wife or her marriage, all the remainder of my lands to him and his heirs forever; but in case my son should involve himself in debt at any time to the amount of £30 current money, or should offer any part of said land for sale, then I give my land unto my two daughters, Mary Dehorty and Peggy Travers, to be equally divided between them—to them and their heirs."

"*Item.* I order and direct that my widow shall not will to my blood kin, or any of her blood kin, any of the estate above-mentioned, or in other words, my meaning is, that I leave my widow my whole estate forever, and to be at her disposal at her death, except mine or her blood kin, Samuel Walter excepted." Prout the said will.

John Dehorty in his lifetime executed a bond for a sum above £30; it was not, however, shown that he owed at any time a sum greater than he was able to pay out of his personal estate: indeed, the contrary appeared to be the fact, for at the time of his death, shortly after the execution of the bond, his personal estate amounted to $1,579 97, and his debts, funeral expenses, and all, were only $1,018 22, leaving a clear balance of $561 75, as appeared from the administration account on his estate.

The lessor of the plaintiff claimed under M. Dehorty and P. Travers; and defendants under John Dehorty, the son. The cause was now argued by *Hall*, for the lessor of plaintiff, and *Clayton*, for the defendant. The two questions moved were, whether the condition was valid, and whether there was any breach of it.

*Hall.*—The second breach of the condition restraining the right of alienation, we admit is repugnant; but the first is valid. It is a first principle of the law, that he who has a right to property, has the right to dispose of it, whether by grant or devise, as he may deem proper; particularly, in cases of devises, which are purely gratuitous. Now, is this case an exception to the general rule? As we can find no condition in the books like the present, we must argue from analogy.

In *Thelluson* vs. *Thelluson,* 4 *Vezey, jr.*, 318-9, 329-40-41, there is a very strong instance of a successful attempt at fettering an estate. The testator, who was immensely wealthy, by his will so limited his estate, that his heirs were not to receive any part of the profits, until after the death of all his children and grand children in esse, and in ventre sa mere, at the time of the testator's decease, until which time the estate was to accumulate in the hands of trustees. It was calculated that the estate would, by that time, accumulate to seventy millions; yet it was held good. An estate to a man and his heirs, tenants of Dale is a valid condition. 2 *Bl.* 154. So, "as long as he continues unmarried," is a good condition. *Ib.* 155. (*Quere.*) So "that devise take the name, use the coat of arms, and reside in the manor-house of the devisor." 2 *Wood. Lec.* 141-2. So that devisee shall not marry a Scotchman, or any one of Scottish parentage. *Perrin* vs. *Lyon,* 9 *E. R.* 170. So to A. in fee—but if he dies without lawful issue living at his death, he shall not have power to devise, except to his sisters. 6 *E. R.* 172.

Generally, the grant of an estate, implies the right to dispose of it; but, short of a perpetuity, the parties may restrain the exercise of that right according to their pleasure. 8 *T. R.* 61.

Conditions may 1st. affect the power of the grantee or devisee *over the thing granted or devised;* 2d. The power of the grantee or devisee *over*

The said William Walter afterwards, in the month of September, one thousand eight hundred and twenty, died without revoking or altering the said last will and testament, which was duly proved and recorded, leaving his widow, the said Ann Walter, to survive him.

*collateral matters.* And it is a sound distinction that the same condition is often void in the former case, and valid in the latter. Then if A. enfeoffs B. of whiteacre, upon condition that he shall not alien it, the condition is clearly void. Yet if B. be seised of *whiteacre,* and A. enfeoffs him of *blackacre,* upon condition that he shall not alien whiteacre, the condition is good, because it regards collateral matter. *Co. Lit.* 223, *a.* And so all other conditions which if annexed to the land granted or devised are void *merely* on account of their repugnancy to the estate passed, are good, if the act be done or not done, and upon which the estate granted or devised is limited over, is to operate upon other lands or other things. *ib.* All repugnant conditions to be found in the books, are conditions which limit the power of the devisee or grantee *over the estate granted or devised.* (*Quere.*) As that grantee shall not take the profits. *Co. Lit.* 206, *b.* That tenant in fee shall not alien. *Co. Lit.* 206, *a ;* 223, *b.* And other like conditions. *Ib.* and *Bac. Abr.* 410 ; *Com. Dig.*, condition *D.* 4, 5.

In the principal case, the condition is, that the devisee shall not involve himself in debt at any one time £30, which is a collateral right, and therefore, the condition is not repugnant to the nature of the estate devised. Nor is this condition an *impossible* one. An *impossible* subsequent condition is void, and the estate is absolute. But an improbable condition is good, and the estate void. As that a married man shall marry such a woman, which is improbable, but not impossible ; for, perchance, his wife may die before himself. 1 *Roll.* 419, *l.* 45. That the pope shall be in London within a day. 1 *Roll.* 420, *b.* 2. That it shall rain to-morrow, which may happen though it be out of human power to cause it. And so of other conditions. *Com. Dig.* condition *D.* 1-2 ; *Co. Lit.* 206, *a. n.* 1., and there was no absolute and uncontrollable necessity, that John Dehorty, the son, should have become involved in debt at any one time £30.

Nor is the condition *illegal.* All conditions against law are reducible to one of these three heads. 1. Either to do *malum in se* or *malum prohibitum.* 2. To omit a *duty.* 3. To *encourage* such crimes and omissions. 1 *P. W.* 189 ; *Co. Lit.* 206, *b. n.* 1 ; 2 *Bl. C.* 157 , *Com. Dig. t.,* condition *D.* 3. Does the not becoming involved in debt fall under any of these?

It was objected at the trial below, that it was against the policy of the law that a man's land should not be subject to the payment of his debts. But this is *only while the tenant himself remains in the perception of the profits.* But we contend that this is no longer the property of John Dehorty the former tenant, after the breach of the condition. You cannot give a man an estate for the benefit of his creditors, nor change the nature of one. Estates tail are valid, yet cannot be sold for debt s; you cannot charge them. If it be urged that the devisee would have no interest in keeping the

The said widow, Ann Walter, died in the month of August, one thousand eight hundred and thirty-four, without having made any disposition by will or otherwise, of the premises mentioned in the declaration, which are the real estate mentioned in the said will of the said William Walter.

condition after his lands should be sold, the answer is, that the same objection applies to grants on condition of taking a particular name; using a coat of arms ; living in a particular house, or not marrying a Scotsman—which are good conditions. 1 *Fearne,* 384, relates to direct conditions, and does not apply here. *Ambler* 379, 380, was cited below, and much relied on by the court. The point there decided was, that a condition that tenant in tail should not suffer a recovery was void. Now, a recovery is inseparable from an estate tail, and as the condition acted *on the thing granted,* it was void. It is no one of the incidents of an estate in fee that the tenant be at liberty to contract debts—it is merely *inconvenient.* A *personal annuity* was devised to one on condition that he should not become a bankrupt, and the condition was held good. 6 *T. R.* 684, *a fortiori,* in case of real estate. The act of bankruptcy, too, implies a *deficiency* for the creditors, and the determination of the annuity there diminishes the dividend for the creditors. That case is stronger than this.

2d point.—With regard to the word " involve " there can't be the least doubt. The expression " at any one time " shows it clearly relates to the simple act of incurring a debt of £30, with reference to devisee's ability to pay it, independent of the lands.

*Chancellor Ridgely* adverted to the case Hunter *vs.* Galliers, 2 *T. Rep.* 133, where a proviso in a lease for twenty-one years, that the landlord should re-enter on the tenant's committing any act of bankruptcy was held good.

*Clayton.*—This is not the case of an annuity, or a *term for years,* both of which are subject to different rules. A termor for life or years may be restrained from aliening, which a tenant in fee cannot be. *Co. Lit.* 223. *b. n.* 1. The owner of land is not at liberty to dispose of it *as he sees fit,* but subject to the rules of the law.

This is a case of the first impression: No cases in point are to be found in the English books; and if they could be found, and should support the condition, yet they would not apply to this country, for lands are here in a very different situation from what they are in England. It is the policy and object of the laws, and in fact one of the incidents of land in this country, that it shall be liable for the debts of the tenant or owner, and it is the duty of the courts to resist any attempt to prevent that liability from attaching. This is a direct attempt of that kind, for the amount of the restriction is entirely immaterial—if it be good for £30 it would be good for one cent; and the laws would become a dead letter.

Inconveniences would encompass the tenant himself. He could not hire

Samuel Walter, named in the said will of the said William Walter, was an illegitimate child of the said William Walter.

If the court are of opinion, from the above statement of facts, that the legal title to the premises mentioned in the declaration, is vested in

laborers for the cultivation of his land, nor stock his farm, nor improve it without endangering his title. Every thing the most trifling—every thing wanted, whatever be the urgency of the case, must be paid for in advance. If the tenant is attacked by a sudden disease, the messenger for medical aid must bear the precise fee in his hand.

Is not such a condition impossible? No art or precaution can preserve a man through the whole course of his life *entirely* exempt from debts. This condition is in this state a restraint upon alienation; for in this state, one mode of alienation is by sheriff's sale, which the condition if good would effectually prevent. If this condition be good as to the *devisee*, it would be good as to the *heirs ad infinitum* of a devisee, and thus introduce perpetuities which the law abhors. It is similar to the condition that the tenant shall not receive the profits, which is clearly void. *Co. Lit.* 206, 6.

So a bond by tenant in fee not to commit waste, is void, though the bond be a distinct act from the deed of grant, and so collateral to the grant. (*Quere.*) So of a grant upon the collateral condition not to marry. Hence there is no distinction between collateral and direct conditions. *Ambler,* 379, case of the condition not to suffer a common recovery, was collateral also. In Davidson *vs.* Foley, 2 *Brown's Cha. R.* 203, an attempt had been made so to frame an annuity as to exclude all of the annuitant's creditors, except such as were mentioned in a schedule; and the court decreed in favor of the creditors attempted to be excluded. It is a sufficient objection to this condition, that it is an innovation upon the common law, *Co. Lit.* 379, *b.* But if the condition were good, yet there has been no breach— for the word "involve" necessarily implies an inability to pay, which never existed on the part of John Dehorty, the devisee—he left a clear personal estate of $561,75, after the payment of all debts and funeral expenses.

*Hall,* in reply.—*Co. L.* 379, *b.* means that new inventions to get rid of the principles of the court, ought to be discountenanced; but to reject a novelty which contravenes no rule of law, would be to bar the doors of justice against more than half the cases that occur, which all involve some new circumstances.

A great principle is, that tenant in fee may dispose of it as he pleases. 2 *Brown Ch.* 203, was to protect annuitants against their creditors; but here the creditors have *no remedy* against the land, because the devisee has none—it does not remain in his hands to their injury. The case in *Ambler* was clearly a direct condition. There is a great difference between the liability of lands for debts and the power to incur debts. I doubt whether a condition against marriage annexed to land be generally void. It is true, that legacies on such a condition are absolute, (*quere,* not always,) but that

## 62   BARNARD'S LESSEE *vs.* BAILEY & KETTLEWOOD.

the lessors of the plaintiff, then judgment to be rendered in their favor.

*Gilpin* for plaintiff.—The question is whether, under the will of her husband, Ann Walter takes an estate for life with a power of disposal at her death ; or an estate in fee.  It is a question of some

proceeds upon the rule of the *civil law*, introduced by Augustus, on finding by a census of his subjects, a great proportion unmarried.

General restraints upon trade are decided to be void, because it is the duty of every one having a trade to exercise it for general benefit ; and because it is the interest of the state that competition should exist.  Is it the duty of a man to run in debt ?  Is it the *interest* of the state ?  And *particular* restrictions of a trade are not void : this is but a *particular* restriction against debts under £30.  This can never be a perpetuity, as John Dehorty's heirs would, after his death, have had an absolute estate had he not broken the condition.  It would be more convenient for tenant in tail, for life, and years, to have a fee ; that, however, would be no argument in a court of justice for extending their interests to a fee.

RIDGELY, *Chancellor*, (present, Booth, Chief Justice, Common Pleas, and Judges Warner, Cooper, and Paynter.)

This cause has been extremely well argued.  Every thing has been said that could throw any light upon the subject, and we are unanimously of opinion, as we were when this cause was in this court before, that the condition is *good*, and that there has been a breach of it.  It is, however, due to the Supreme Court, to state that two of the members of this court, have, subsequently to the first reversal of the judgment of that court, entertained some doubts on the question : those doubts have been removed by this argument.

It is true, the estate if sold, would have been fettered ; but that takes place on the alienation of all estates on condition, or base fees.

It is no perpetuity.  We think the word " involve" means here, incurring debts to the amount of £30, without reference to the devisee's ability to pay, independent of the land.  That part of the condition prohibiting the alienation of the land is void.  We think the whole case clear, beyond any controversy.  We have tested it by every legal principle that can have any bearing.

Judgment below reversed and cause remanded for new trial.

Same case.  Supreme Court, Kent, October Term, 1818.  The cause was again argued nearly as before.—Present, Chief Justice Johns, Davis and Paynter.

JOHNS, *Chief Justice*, said, we have no doubt about this question, but the High Court of Errors and Appeals have decided against our opinion, and, in conformity with that decision, he told the jury they must, as they then accordingly did, find for plaintiff.

*Hall* and *Ridgely* for plaintiff.

*T. Clayton* and *Brinckloe* for defendants.

difficulty—to be decided by the intention of the testator—in ascertaining which, the Court will not lay hold on any particular clause, but respect the prevailing purpose apparent from the whole will. I admit, that at first view, the terms of the will seem strong to give an absolute property; but on closely examining it, the court cannot fail to be satisfied that the real intention was to give a life-estate, with the power of disposing of the fee *by will* at her death. The term "estate," as used in the will, is not to be understood in its technical sense, but as a description of the property. This is clear, for in the first place he gives the "estate" expressly for life. The difficulty arises upon the second clause; but the meaning of which seems to be obvious to add to the life estate, already expressly given to the wife, a power of disposal in fee *at her death*. Why at her death, if he intended to give *her* any "estate" in the property other than for life? If he meant to give her a fee simple, why let it commence only at her death?

The estate was not to be willed by the wife to either the testator's blood kin, or to her own, except to Samuel Walter. Now, if she is adjudged to take a fee by the will, how can this intention be carried out? If she has a fee, she may devise it to whom she pleases, to his blood kin or her's. The restriction is void. The expressed intent of the testator may be violated; but if she has but a life estate, with a power of disposal according to the will, the intention of the testator may be complied with.

One devises all his freehold estate to his wife during her natural life, and also at her disposal afterwards to *leave* it to whom she pleases; *held*, that this only gave her a power to *leave it by will*, and that a disposition of it by feoffment in her life time was void. 10 *East*, 438; *Doe* ex dem. *Thorley vs. Thorley, et al.*

I admit that, as a general rule, wherever there is a power given to dispose of a fee, a fee is given; but where there is a restriction or limitation of the power, it is otherwise; as in this case, the power of disposition is restricted in such manner as that it cannot be understood consistently with a fee simple estate in the widow.

Where the express estate is limited, with a power of disposition added, the person takes but the estate limited, and the other is a power. 2 *Preston on Estates*, 82. A devise to one for life to dispose of at his death, is a life estate, with a power of disposition merely. *Idem.* 84.

And though a disposition to a man generally with a provision for leaving, or willing, or disposing of the property, either during his life or at his death, may give a fee, yet this can happen in no case where the first devise is only for life. 16 *Johns. Rep.* 537, 588.

" I give to A. L. the fee simple of my house, and after her decease to William her son," construed but a life estate in A. L., with remainder in fee to her son.  *Anderson's Rep.* 51.

A devise " to his wife M. for life, and by her to be disposed of to such of his children as she should think fit," is but a life estate with a power to devise in fee.  1 *Peere Wms.*, 149, 171; *Salk.* 239; *S. C.* 13 *Vesey*, 444.

*J. A. Bayard,* contra.

The intention so much relied on as controlling the devises in a will, must be such an intention as is manifest on the face of the will, and such as is consistent with the rules of law.  It is contended that this is but a life estate with a power of appointment; but this is not the case of a mere power added to a limited estate, but there is a clear fee given to the wife, and the doubt arises from the attempt to qualify that fee by a restriction as to her testamentary disposition of the estate, which restriction is not warranted by the rules of law.

The intention of the testator must be defeated by any mode of construction, for he designed to cut off both her blood relations and his own.  If, therefore, this be but a life estate, with a power of appointment, as no appointment has been made, the estate will go to the testator's blood kin; if a fee, it goes to her blood kin.  The question then is, which construction will best comport with the rules of law.  What estate did Mrs. Walter take?  Could she not have mortgaged or sold the estate during her life ; would it not have been liable for her debts? And if the testator meant to make her thus the absolute owner of the property, he meant to give her a fee.

There can be no doubt that a life estate may be enlarged into a fee by subsequent words.  The second clause of this will, gives an express fee; and not merely a power of appointment after her death. Nor do I admit the universality of the rule, that a life estate cannot be enlarged by any form of power as to subsequent disposition.  16 *Vesey* 135.

If the two clauses clash, the last must govern.  The general intent here, is to give the widow all ; the restriction attempted to be added is void.

A condition inconsistent with the estate given is void.  3 *Vezey* 324 ; 1 *Eden* 425 : *Ambler* 379 ; 1 *Burr. Rep.* 84 ; 3 *Merivale* 176.

*R. H. Bayard,* in reply.  Our opponent assumes the position that this is a bequest in fee, and then argues that the restriction upon it is void.  We concede the result, if he has established the premises ; but that is precisely what we are contending for, that this devise is not of a fee to Mrs. Walter, but a life estate with a mere power of disposition.

The heir at law is not to be disinherited but by express language. Their construction defeats the first bequest for life, as well as the express provision that the estate shall never be given to his kin or her's; if our's defeats the latter intention, it does no greater violence to the will than their's, and it leaves the estate with the heirs at law, instead of giving it away to strangers.

*By the Court :*

T. CLAYTON, *Chief Justice.* This is not merely a question of construction of a will as to the intent of the testator, but of the application of settled principles of law. By the first clause of the will a life estate merely is given to the widow, but the second clause enlarges her estate to a fee simple, which may well be. The testator declares his meaning to be, to leave his widow his whole estate forever, and to be at her disposal at her death, except his and her blood kin. These words unquestionably give a fee simple, as well by the expressed intent of the testator as by construction of law. There is no doubt of the intention of the testator in any part of the will. He had two purposes, both of them manifest ; to give his wife the estate, and to keep it from ever going to his or her blood kin. The first and main purpose must be executed, though the other be defeated ; as it is said it will be under any construction of the will. He sought to effect this latter purpose by a mode in which he could not by the rules of law effect it, by appending it as a restriction to the estate before absolutely given to his widow. Such a restriction is inconsistent with the previous devise and is void. This is not the case of the mere grant of a power of appointment or disposition, but of the attempt to restrain a power incident to the estate before given.

Judgment for defendants.

*Gilpin* and *R. H. Bayard* for plaintiff.
*J. A. Bayard* for defendants.